UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION NO. |
| | : | 3:17CR00160 (VLB) |
| vs. | : | |
| | : | |
| ORLANDO QUIROS | : | JANUARY 22, 2019 |

**ORLANDO QUIROS'S MEMORANDUM IN AID OF SENTENCING**

The defendant, Mr. Orlando Quiros, submits the following memorandum in aid of sentencing. For the reasons discussed below, Mr. Quiros respectfully requests that the Court impose a below-Guidelines sentence, specifically that it impose the minimum mandatory sentence of ten (10) years of imprisonment on Count One of the Superseding Indictment and that any term of imprisonment imposed on Count Five of the Superseding Indictment be run concurrently with Count One for a total sentence of no more than ten (10) years of imprisonment.

    I.    **History and characteristics of Orlando Quiros.**

        a.    **Mr. Quiros's background and personal history.**

Mr. Quiros is a 42-year-old man who has the potential to lead a respectable and law-abiding life. He was raised in a "stable and nurturing environment absent any form of neglect or abuse." PSR ¶ 100. He graduated from high school without academic setbacks, and he "certainly possesses

1

the ability and aptitude to support himself in a lifestyle free of further criminal conduct." PSR ¶ 101. In addition, Mr. Quiros has people in his life who love and support him, including his parents; his fiancé with whom he has a seven-year-old child; and his ex-partner, with whom he has two children, ages thirteen and twenty-five. PSR ¶ 56.

      b. **Mr. Quiros acknowledges his wrongdoing and assumes responsibility for his actions.**

Mr. Quiros accepts responsibility for his actions and is remorseful for his offense conduct. He was arrested for the instant offense on July 26, 2017, and he pled guilty on July 17, 2018. PSR Cover Sheet. During this period of pretrial detention at the Wyatt Detention Facility ("Wyatt"), Mr. Quiros has committed no disciplinary infractions and has been a model inmate. He has taken advantage of available programming at Wyatt and made efforts to improve himself, obtaining certificates for the completion of programs on anger management, substance abuse, and "rational thinking." He has also regularly attended religious services and is characterized by staff as "respectful" toward both peers and Wyatt employees. PSR ¶ 10.

    II.    **A departure from the Sentencing Guidelines is warranted.**

      a. **The governing legal standard requires the Court to impose the sentence that is minimally sufficient to accomplish the purposes of a criminal sentence.**

The Sentencing Guidelines, according to the PSR, recommend a sentencing range of 151-188 months' imprisonment in this case. While the Court is required to consider the range of penalties suggested by the Sentencing Guidelines, it is not bound by that recommended range. Gall v.

2

United States, 552 U.S. 38, 50 (2007), The Court is instead bound by the dictate of 18 U.S.C. § 3553(a) that the Court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. Consequently, as the Second Circuit held in United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006), if the Court determines that a lower sentence will be as effective in meeting the goals of sentencing as a higher one, it must opt for the lower sentence. *See id.* at 142 (where a Guidelines sentence is "in equipoise with [a] below-the-range sentence," the parsimony clause requires imposition of the lower sentence). As discussed below, a ten (10) year term of imprisonment is more than sufficient to achieve the goals of sentencing in this case.

> b. **In this particular case, a departure is warranted pursuant to United States v. Fernandez.**

As acknowledged in the PSR, the probation officer's guideline calculations differ from those contemplated by the parties within the plea agreement. PSR ¶ 92. Based on an initial assessment, the parties calculated that Mr. Quiros, whose criminal history category is II, should be assessed a total offense level of 31, which yields a guideline imprisonment range of 121 to 151 months. PSR ¶ 6. In contrast, the probation officer calculated that Mr. Quiros should be assessed a total offense level of 33, which yields a guideline imprisonment range of 151-188 months' imprisonment. PSR ¶¶ 28, 36. The difference between the two calculations results from the fact that the PSR includes a two-level increase for a seized firearm under USSG § 2D1.1, Application Note 11(A). The Government did not include the

3

enhancement in its plea agreement with Mr. Quiros ostensibly because it has no evidence that the presence of the firearm in this location (not his residence) was connected with the offense. Therefore, the Probation Officer has arrived at an evidentiary conclusion that is belied by the Government's own factual analysis.

In light of these circumstances, Mr. Quiros respectfully requests that the Court consider whether a departure is warranted pursuant to United States v. Fernandez, 877 F.2d 1138 (2d Cir. 1989) (holding that a district court may depart from a Guidelines sentence in order to give effect to a plea bargain if such a departure is warranted). PSR ¶ 92. A period of imprisonment that exceeds one decade is not only unnecessary to achieve the goals of sentencing in this case, but it could actually be counterproductive in so far as excessively lengthy periods of incarceration have been shown to increase the "criminogenic effects of imprisonment, which include contact with more serious offenders, disruption of legal employment, and weakening of family ties," while shorter periods of incarceration divert offenders from these same effects.[1] This is particularly the case for offenders like Mr. Quiros who has an extremely limited criminal history with a single period of incarceration eleven (11) years ago and a stable living arrangement with an intimate partner and their children.[2]

---

[1] *See, e.g.,* U.S. Sentencing Commission, Staff Discussion Paper, Sentencing Options under the Guidelines 19 (Nov. 1996), *available at* http://www.rashkind.com/alternatives/dir_00/USSC_sentencingoptions.pdf.

[2] *Id.* at 18.

4

### III. There are two bases that warrant a downward departure.

#### i. The Court should depart downward pursuant to USSG § 5H1.4 based upon Mr. Quiros's physical condition.

The autoimmune disease from which Mr. Quiros suffers, *Pemphigus Vulgaris*, is potentially life-threatening, with possible complications including skin infection; infection that spreads to one's bloodstream causing sepsis; malnutrition as a result of the painful oral lesions that make it difficult to eat; medication side effects, such as high blood pressure and infection; and death, if left untreated.[3] Because of this disease, Mr. Quiros often experiences severe pain. As a result of the mouth sores and resulting loss of appetite and inability to eat and, Mr. Quiros has experienced weight loss of more than 85 pounds since his arrest when he weighed 320 pounds. Mr. Quiros also experiences acute anxiety as a result of the disease as well as the inability to concentrate or remain alert. PSR ¶ 59. In fact, he has requested psychological counseling while in pretrial detention, and it has been recommended that he participate in a program at Wyatt to improve his mental health.

Mr. Quiros's physical condition is relevant in determining whether a departure is warranted because the condition is present to an unusual degree and distinguishes the case from the typical cases covered by the Guidelines. USSG § 5H1.4. Mr. Quiros's medical records from the

---

[3] *See, e.g.,* "Complications of Pemphigus," Diseases & Conditions, Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/pemphigus/symptoms-causes/syc-20350404.

Department of Dermatology at UCONN Health reflect treatment provided at the beginning stages of the disease in July 2015 through May 23, 2017, several weeks before his arrest nearly two years ago. The earliest records reflect that "active [oral] lesions" were detected; that Mr. Quiros reported "pain with swallowing"; that Mr. Quiros received intravenous infusions of the immunosuppressant drug, Rituxan; and that Mr. Quiros was prescribed the oral steroid, Prednisone. *See* medical records, UCONN Health, July 22, 2015, attached as Exhibit 1. Given the chronic nature of the condition, Mr. Quiros's doctor directed him to discuss the costs of treatment and insurance options with a financial advisor. *Id.* Follow-up examinations found that Mr. Quiros's *Pemphigus* was worsening, causing him to cough up blood and experience insomnia due to the pain. *Id.* at August 3, 2015. Between 2015 and 2017, consistent with the proper standard of care, regular laryngoscopy procedures were performed on Mr. Quiros to monitor his condition. *See* medical records, UCONN Health, September 17, 2015, attached as Exhibit 2. Although Mr. Quiros's condition improved somewhat after many months on Prednisone and regular infusions of Rituxan, and although the oral lesions were determined to be benign, Mr. Quiros continued to experience flare-ups requiring continued use of steroids and immunosuppressant drugs. *See* Exhibit 1 at February 9, 2016; May 9, 2016; February 15, 2017; Exhibit 2 at June 21, 2016 ("Asymptomatic oral cavity ulcers appear to be persistent."); June 16, 2017 (reporting a "new papillomatous lesion" on the epiglottis that must be removed if it continues to grow).

Mr. Quiros reports that since his incarceration and the lack of consistent systemic treatment, his symptoms have worsened and his pain has increased. *See* Exhibit 2 at March 15, 2016 ("He likely requires systemic treatment."). Counsel has communicated on more than one occasion with the medical staff at Wyatt regarding Mr. Quiros's need for appropriate treatment for *Pemphigus Vulgaris*. Although a single intravenous infusion of an immunosuppressant was administered to Mr. Quiros at Providence Hospital, this is the extent of the treatment provided by Wyatt during the past eighteen months. In fact, Mr. Quiros has received neither immunosuppressant medications nor steroids to lessen the pain and recurrence of oral lesions; instead he is given only over-the-counter pain medications.

For all of these reasons, a departure is warranted pursuant to USSG § 5H1.4.

In regard to Bureau of Prisons placement, Mr. Quiros requests that he serve his sentence at FMC Devens in Ayer, Massachusetts, which is the closest federal medical center to his family.

### ii. The Court should depart downward based upon the principles of incremental punishment.

As reflected in the PSR, the longest period of imprisonment ever previously imposed upon Mr. Quiros has been six (6) months. PSR ¶ 41.[4] A

---

[4] **Mr. Quiros disputes the statement in the PSR that "Mr. Quiros has spent approximately 11 months and 15 days in the custody of the DOC between July 17, 2007 and July 2, 2008." PSR ¶41. Mr. Quiros did not spend more than four to five months in DOC custody, as he**

7

Guidelines sentence here would be excessive. In <u>United States v. Mishoe</u>, 241 F.3d 214, 220 (2d Cir. 2001), the Second Circuit stated:

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences…for the prior offenses.

While the <u>Mishoe</u> decision principally addressed the Career Offender Guidelines, the teaching of that decision applies here. Specifically, the concept of incremental punishment is relevant to the sentencing goal of deterrence. Where the longest period of imprisonment imposed upon an individual has been six (6) months, a Guidelines sentence of 151-188 months is excessively severe, because there is no support for concluding that a sentence of 151 months or more would be more effective than a sentence of 120 months. This is especially so where, as here, Mr. Quiros's six-month sentence occurred eleven years ago, and Mr. Quiros has served no period of incarceration since then.

### IV. <u>A below-Guidelines sentence serves the goals of sentencing.</u>

As is evident, 18 U.S.C. § 3553(a)(2)(A) requires the Court to recognize "the need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for

---

began serving a six-month sentence on July 17, 2007; this was the only term of incarceration that he has ever served.

the offense." For Mr. Quiros, the punitive purpose of sentencing can be achieved in this instance with a below-Guidelines sentence. The punitive effect of any sentences is not viewed in a vacuum by simple reference to an offense; rather, that effect is, and must be, measured against Mr. Quiros. Mr. Quiros has only ever served six (6) months in jail before, and that was over a decade ago. A sentence of 120 months is already a prolonged period of imprisonment, particularly for an individual who has only previously served 1/20th of that time; an additional 31-68 months would truly be excessive.

Furthermore, in regard to the sentencing goal of general deterrence, it is not necessarily the case that the *severity* of a sentence—as opposed to the *certainty* that a sentence will, in fact, be imposed—has a significant general deterrent value. For instance, in a study of offenders whose sentences varied widely in terms of imprisonment versus probation, the data demonstrated that "incarceration seems to have little net effect on the likelihood of subsequent rearrest."[5] This was particularly true for those facing drug-related charges, for which it was found that incarceration seemed not to deter subsequent criminal behavior.[6] Other studies have suggested that the impact of imprisonment on reoffending "was either non-existent or that imprisonment of offenders (holding other relevant factors

---

[5] *See, e.g.,* Donald P. Green & Daniel Winik, <u>Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism Among Drug Offenders</u>, 48-2 CRIMINOLOGY 357, 381-82 (2010), *draft version available at* <https://isps.yale.edu/research/publications/isps10-041>.

[6] *Id.*

constant) increased the likelihood that they would re-offend over the alternative—imposing a non-prison sentence."[7] Recognizing that "effective deterrence arises from certainty, not harshness, of punishment," Judge Weinstein of the Eastern District of New York has suggested that "our society might better consider whether our scarce resources would be better spent, not on extended incarceration, but . . . on non-incarceratory techniques." United States v. Bannister, 786 F. Supp. 2d 617, 668 (E.D.N.Y. 2011).

V.      Conclusion

For the reasons discussed herein and as will be discussed in greater detail at sentencing, Mr. Quiros respectfully requests that the Court impose a below-Guidelines sentence, specifically that it impose the minimum mandatory sentence of ten (10) years of imprisonment on Count One of the Superseding Indictment and that any term of imprisonment imposed on Count Five of the Superseding Indictment be run concurrently with Count One for a total sentence of no more than ten (10) years of imprisonment..

Respectfully submitted,

THE DEFENDANT,
Orlando Quiros


/s/ Brian J. Woolf  ct10227
Brian J. Woolf, Esq.
Woolf Law Firm, LLC

---

[7] *See* Anthony N. Doob et al., *The Effects of Imprisonment: Specific Deterrence and Collateral Effects*, University of Toronto, Centre for Criminology & Sociolegal Studies A-2 (Feb. 14, 2014), *available at* http://criminology.utoronto.ca/wp-content/uploads/2013/09/DWG-EffectsImprisonmentHighlights14Feb2013.pdf.

10

50 Founders Plaza
East Hartford, Connecticut 06018
Fed. Bar. No. ct10227
Firm State Juris No.: 40852
Phone: 860.290.8690
Fax:    869.290.8697
Email: w@woolflaw.com

## CERTIFICATION

I hereby certify that on January 22, 2019, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

A true and exact chambers courtesy copy of the foregoing was sent by USPS First Class Mail to:

The Honorable Vanessa L. Bryant
Abraham A. Ribicoff Federal Building
450 Main Street
Hartford, CT 06103

/s/ *Brian J. Woolf* ct10227
Brian J. Woolf, Esq.