UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          CRIMINAL NO. 3:17CR160 (VLB)

v.

ORLANDO QUIROS          June 24, 2020

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
EMERGENCY MOTION FOR COMPASSIONATE RELEASE**

The defendant, Orlando Quiros, has made an emergency motion for compassionate release under 18 U.S.C. 3582(c)(1)(A) in view of the COVID-19 pandemic [Dkt. #342, hereinafter "Def's Mot."]. The Government respectfully submits that the defendant does not meet the statutory requirements for compassionate release.

**I.     THE COURT MAY LACK AUTHORITY TO GRANT THE MOTION**

The compassionate release statute requires that a request be presented first to the Bureau of Prisons for its consideration. Only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal BOP's failure to move on the defendant's behalf, may a defendant move for compassionate release in court. That restriction is mandatory, and it continues to serve an important function even during the present crisis.

The compassionate release statute provides, in pertinent part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . .

18 U.S.C. § 3582(c)(1)(A).

Even if not jurisdictional, the exhaustion requirement of § 3582(c)(1)(A) is at least a mandatory claim-processing rule and must be enforced if a party "properly raise[s]" it. *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (*per curiam*) (holding that Fed. R. Crim. P. 33, which permits a defendant to move for a new trial within 14 days of the verdict, is a non-jurisdictional but mandatory claim-processing rule); *Theodoropoulos v. I.N.S.*, 358 F.3d 162, 172 (2d Cir. 2004) ("[A]s a general rule, courts are required to strictly enforce statutory exhaustion requirements."); *Monzon*, 2020 WL 550220, at *2 ("It is unnecessary to resolve here whether § 3582(c) creates a jurisdictional bar to the modification of Monzon's sentence or simply sets forth a statutory exhaustion requirement. If it imposes the latter, it must be 'strictly enforce[ed].'"). The government raises the rule here, and therefore the Court must consider it.

The defendant makes the representation in his papers that counsel has requested the Warden at FCI Fort Dix for immediate Compassionate Release as an inmate with a "debilitated medical condition", and that the request was denied on May 28, 2020. *See* Def. Memo, Exhibit B. The defendant makes no representation that he has initiated or completed the applicable administrative request and appeal process outlined in BOP Program Statement 5050.50, <u>Compassionate Release/Reduction in Sentence, Procedures for Implementation, 18 U.S.C. 3582(c)(1)(A)</u>. However, because nearly 30 days have passed since the Warden's initial denial of the request, and the defendant's request necessarily predated that denial by some period of time, on this record, the government urges the Court to consider the exhaustion requirement to be met.

## II. THE MERITS

On February 14, 2019, the defendant was sentenced by this Court to two terms of imprisonment of 136 months, concurrent, to be followed by 5 years of supervised release, the

defendant having entered pleas of guilty to conspiracy to possess with intent to distribute and to distribute at least 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846; and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). According to defense counsel, he has served approximately 35 months, or approximately 25%, of the sentence imposed by the Court.

As to the merits, the Government does not underplay the defendant's concerns in any way. This Court, like all citizens, is vividly aware that COVID-19 is a nefarious illness, which has infected large numbers of people and caused many deaths in a short period of time. BOP has accordingly taken significant measures in an effort to protect the health of the inmates in its charge. BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO). On March 13, 2010, BOP announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following: all incoming inmates are screened, and staff are regularly screened; contractor visits are limited to essential services; nearly all attorney, social, and volunteer visits have been suspended; inmate movements between facilities have been extremely limited; and institutions are taking additional steps to modify operations to maximize social distancing. Many additional details are available at the BOP website, www.bop.gov. With respect to prevailing conditions at Fort Dix, the most recent report from the institution, available on June 24, 2020, indicates that 14 inmates and no staff are positive for the virus. The defendant would do well to consider that these statistics are remarkably positive, and are more so than in

many communities outside the BOP. It is not clear that the defendant stands a greater chance of infection, or complications from it, within the BOP than without.

Nonetheless, unfortunately, some inmates have nevertheless become ill, and inevitably more will in the weeks and months ahead, as will many citizens not in the custody of BOP. But the solution is not to exclude BOP from reviewing applications for compassionate release. There are many challenging factors to consider during this unprecedented pandemic, and BOP should have the opportunity to assess those factors during the statutorily required review period. For example, notwithstanding the current pandemic crisis, BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider myriad other factors, including the availability of transportation (when the interstate transportation services often used by released inmates are reduced, if not suspended) and supervision (when the Probation Office has necessarily cut back on home visits and supervision).

In addition, on March 26, 2020, the Attorney General directed the BOP Director, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement. That authority includes the ability to place an inmate in home confinement during the last six months or 10% of a sentence, whichever is shorter, see 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g). Further, § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136,

enacted on March 27, 2020, permits BOP, if the Attorney General finds that emergency conditions will materially affect its functioning, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

For all of these reasons, BOP is well-positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities. The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not just in the ordinary case, but also under these exceptional circumstances. Even where the defendant has substantially complied with the mandatory exhaustion requirement, it may be imprudent to take the matter out of the hands of the BOP and prevent BOP from engaging in that review.

## III. THE STATUTORY REQUIREMENTS

Under 18 U.S.C. § 3582(c)(1), a "court may not modify a term of imprisonment once it has been imposed except" in two limited circumstances:

- Under Section 3582(c)(1)(A)(i), a court may reduce a sentence if "extraordinary and compelling reasons warrant such a" reduction.[1]

---

[1] Application Note 1 to U.S.S.G. § 1B1.13 enumerates four circumstances that constitute "extraordinary and compelling reasons." The first addresses the medical condition of the defendant, focusing on whether the defendant suffers from a "terminal illness" or some other condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." The second concerns the age of the defendant, in that the defendant must be "at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." The third focuses on family circumstances, specifically the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." The fourth turns on the determination of the BOP Director that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the" three prior circumstances.

- Under Section 3582(c)(1)(A)(ii), a court may modify a sentence if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the BOP Director that the defendant is not a danger to the safety of any other person or the community."

The defendant does not qualify for treatment under the latter standard, due, at least, to his age and the length of his sentence. W

With respect to whether the COVID-19 pandemic constitutes "extraordinary and compelling reasons" for a sentence modification under Section 3582(c)(1)(A)(i), the Government recognizes the health risks at stake. As to allegations of any facts that could place him at high risk of complications should he contract COVID-19, the defendant has advanced his affliction with pemphigus vulgaris, a condition from which he has suffered since before his incarceration in this case. Def's Mem. at 2. In his denial of the defendant's request for release, the Warden of Fort Dix has recognized the condition as placing the defendant "at higher risk for severe illness from complications associated with COVID-19". Exhibit B to Def's Mem. However, as the defendant recognizes in his Memorandum, the Warden has also pointed out that

> The medical department [at Fort Dix] has advised that your pemphigus vulgaris is under good control with medication . . . .[and that] [b]ased on your last medical review, you have the ability to perform activities of daily living independently and are able to fully function in a correctional environment . . . . [and that] [w]hile your illness is progressive, there is no evidence that your current medical condition substantially diminishes your ability to function in a correctional facility.

Exhibit B to Def's Mem.

The defendant has provided a letter from Dr. Jaimie Meyer to support his position that his medical condition warrants emergency release. Exhibit D to Def's Mem. The government does not take issue with Dr. Meyer's professional qualifications as they relate to the study of infectious disease in general, and the general observations the Doctor makes regarding the possible effects of infectious disease on some prison populations. But the Doctor's conclusions are general, and

are not particularized as to FCI Fort Dix, the defendant's claimed medical condition or the defendant. They appear to be based, in some part, on the Doctor's review of materials concerning the possible effects of the coronavirus on inmates in certain county jails in New York state, and the conclusions themselves concern, not FCI Fort Dix, or its camp where the defendant is, or any federal correctional institution, but "ICE's NYC area jails." There is no indication in the defendant's papers that the Doctor has ever reviewed any professionally suitable materials concerning the defendant, his claimed condition or the facility in which he is housed. The defendant has not cited any deficiency in the BOP's response to this public health situation at FCI Fort Dix, or why the health condition that may put him at increased risk cannot be given appropriate treatment there. *See United States v. Gileno*, No. 3:19CR161 (VAB), 2020 WL 1307108, at *4 (D. Conn. Mar. 19, 2020) ("With regard to the COVID-19 pandemic, Mr. Gileno has also not shown that the plan proposed by the Bureau of Prisons is inadequate to manage the pandemic within Mr. Gileno's correctional facility, or that the facility is specifically unable to adequately treat Mr. Gileno."); http://www.bop.gov/coronavirus/covid19_status.jsp (last visited Apr. 3, 2020) (summarizing BOP's actions in response to COVID-19).

Accordingly, in this procedural posture, the exception listed in § 3582(c)(1)(A)(i), which is the only one which even arguably applies, does not provide authority for the sentence modification requested in the defendant's pending motion.

\*     \*     \*

For the foregoing reasons, the defendant's pending motion should be denied.

>Respectfully submitted,
>
>JOHN H. DURHAM
>UNITED STATES ATTORNEY
>
>‎              /s/
>H. GORDON HALL
>ASSISTANT UNITED STATES ATTORNEY
>Federal Bar No. ct05153
>Gordon.hall@usdoj.gov
>157 Church Street, 25th Floor
>New Haven, CT  06510
>Tel.: (203) 821-3700

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/
H. GORDON HALL
ASSISTANT UNITED STATES ATTORNEY