UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 3:17-cr-160-VLB |
| ORLANDO QUIROS | July 30, 2020 |

# RULING & ORDER ON MOTION FOR COMPASSIONATE RELEASE [ECF NO. 347]

Before the Court is Orlando Quiros's Motion for Compassionate Release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). [ECF No. 347].[1] Mr. Quiros seeks compassionate release because of his risk of contracting COVID-19 while incarcerated at Fort Dix and his particularly high risk of a severe illness. *Id.* The Government opposes his motion. [ECF Nos. 351, 352]. Mr. Quiros replies. [ECF No. 357]. In further support, Mr. Quiros has additionally filed his disciplinary and educational record, [ECF No. 356], and his minor child has sent the Court a letter. [ECF No. 360]. After considering the briefing, the Court denies Mr. Quiros's motion for the reasons set forth below.

I. **Background**

On July 17, 2018, Mr. Quiros pleaded guilty to conspiracy to possess with intent to distribute and distribution of at least 5 kilograms of cocaine, in violation

---

[1] Per Mr. Quiros's request, the Court orders Mr. Quiros's original motion, which was not in compliance with this Court's Standing Order, as moot. *See* [ ECF No. 347 at 1].

1

of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846; and possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2). [ECF No. 225].

On February 14, 2019, this Court sentenced Mr. Quiros to two terms of imprisonment of 136 months, concurrent, to be followed by 5 years of supervised release. [ECF No. 284]. Mr. Quiros has served approximately 35 months of his sentence. He is currently incarcerated at Fort Dix, and the Bureau of Prisons estimates his release date to be March 22, 2027. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed: July 30, 2020). On June 23, 2020, Mr. Quiros filed a motion to reduce his sentence. [ECF No. 347].

## II. Legal Standard

Under the First Step Act of 2018, federal prisoners may petition courts directly for reduction of their sentences, and judges may grant such requests if "extraordinary and compelling reasons" support reduction. *See* First Step Act of 2018, Section 603(b), Pub. L. 115- 391, 132 Stat. 5194 (2018) (amending 18 U.S.C. § 3582(c)(1)(A)(i)) ("First Step Act"). 18 U.S.C. § 3582(c)(1)(A) now authorizes a court to modify a term of imprisonment "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Where this exhaustion requirement is met, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission." *Id.* The Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* "The defendant bears the burden of showing that she is entitled to a sentence reduction." *United States v. Gagne,* No. 3:18-CR-242 (VLB), 2020 WL 1640152, at *3 (D. Conn. Apr. 2, 2020).

III. Analysis

A. *Authority to Decide*

Mr. Quiros filed for Compassionate Release through the Warden of Fort Dix Federal Correctional Center and received a response denying his request on May 28, 2020. [Dkt. 347-2 (Ex. B)]. Twenty-seven days passed between the Warden's initial denial and Mr. Quiros's filing of the motion, and his request necessarily predated that denial by some period of time. Per this record and in the absence of objection of the government, the Court finds that Mr. Quiros has shown that 30 days passed since he submitted his request, and the Court has authority to decide this motion.

B. *"Extraordinary and Compelling Reason"*

At Congress's direction, the U.S. Sentencing Commission promulgated guidance on the circumstances constituting "extraordinary and compelling" reasons. *See* 28 U.S.C. § 944(t); U.S.S.G. 1B1.13. The U.S. Sentencing Commission has not updated its guidance since the enactment of the First Step Act. *See* U.S.S.G. 1B1.1 (Nov. 1, 2018). The Application Notes to U.S.S.G. § 1B1.13 explain that a defendant's medical condition may constitute "extraordinary and compelling" circumstances when:

> (A) Medical Condition of the Defendant.--
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> [or]
>
>> (ii) The defendant is--
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13, Commentary Application Note 1(A). Any "other" "extraordinary and compelling reason" may also justify relief. *Id.* at Commentary Application Note 1(D). "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994.

The Court finds that, before considering the § 3553 factors, Mr. Quiros has provided an extraordinary and compelling reason. In his denial of Mr. Quiros's request for release, Warden Ortiz recognized that Mr. Quiros's medical conditions condition placed him "at higher risk for severe illness from complications associated with COVID-19." [ECF No. 347-2]. Mr. Quiros is 43. [ECF No. 275 (Jan. 15, 2019 Presentence Investigation Report) at 2]. He is diagnosed with pemphigus vulgaris, *id.* at ¶59, an autoimmune disease that causes blistering of the skin and mucous membranes of the mouth. Genetic and Rare Diseases Information Center,

*Pemphigus vulgaris*, National Institutes of Health (June 22, 2018), https://rarediseases.info.nih.gov/diseases/7355/pemphigus-vulgaris. Treatment for pemphigus vulgaris includes immunosuppressant medication, such as rituximab. *Ibid.* Mr. Quiros has taken rituximab on multiple occasions within the past two years. [ECF No. 349 (Ex. A: Medical Records) at 12 (Oct. 7, 2019 Notation), 40 (Apr. 5, 2019 Notation)]. Rituximab continues to have immunosuppressing effects for up to 12 months after use. *See* Genentech, Inc, *Rituxin (Rituximab)* [package insert] at 5.6 (Warnings and Precautions, Infections), U.S. Food and Drug Administration,https://www.accessdata.fda.gov/drugsatfda_docs/label/2010/103705s5311lbl.pdf (Revised: Feb. 2010). The CDC states that people who are "immunocompromised… from… use of other immune-weakening medicines" "might be at an increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (June 25, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

Mr. Quiros also has a case of bronchitis, diagnosed on December 23, 2019, which, six months later, on June 11, 2020, continues to be listed as "current" rather than "resolved." [ECF No. 350 (Ex. A: Medical Records Cont.) at 10]. The CDC states that people with "chronic bronchitis" "are at increased risk of severe illness from COVID-19." *People with Certain Medical Conditions*, Centers for Disease Control and Prevention (June 25, 2020). The Court finds that these two conditions suffice to show that Mr. Quiros is at a particularly high risk of a severe illness if he contracts COVID-19.

The Government argues that the Bureau of Prisons is managing Mr. Quiros's conditions, [ECF No. 352 at 8], and usually the Court would agree that this point weighs against finding extraordinary and compelling reasons. *See United States v. Mazzo*, No. 3:17-CR-136, 2020 WL 3410818 (D. Conn. June 22, 2020) (denying compassionate release to inmate with well-controlled moderate asthma). But here, some of the treatments of Mr. Quiros's condition place him at higher risk of a severe case of COVID-19, so the Court cannot find that the fact that the Bureau of Prisons is controlling his condition weighs against finding extraordinary and compelling circumstances.

Finally, the Court considers whether Mr. Quiros's risk of contracting and recovering from COVID-19 is higher at Fort Dix than it would be were he released to home confinement. At Fort Dix FCI, where Mr. Quiros is incarcerated, out of 2,750 inmates, the Bureau of Prisons reports that 2 inmates and no staff are currently positive for the virus and 35 inmates and 5 staff have recovered from the virus. *See* Federal Bureau of Prisons, FCI Fort Dix, *available at* https://www.bop.gov/locations/institutions/ftd/ (accessed July 29, 2020); Federal Bureau of Prisons, COVID-19 Cases, *available at* https://www.bop.gov/coronavirus/index.jsp (accessed July 6, 2020). There have been no COVID-19 deaths among either staff or inmates at Fort Dix FCI. *Id.* Fort Dix FCI is also taking numerous precautions to prevent the spread of the coronavirus and to care for those who have contracted it. *See Wragg v. Ortiz*, No. CV 20-5496 (RMB), 2020 WL 2745247 (D.N.J. May 27, 2020) (detailing conditions in Fort Dix).

Mr. Quiros gives two arguments in response. First, he argues that no cautionary measures can make up for the fundamental fact that "physical distancing is not possible in a prison setting." *Wragg v. Ortiz*, No. CV 20-5496 (RMB), 2020 WL 2745247, at *19-20 (D.N.J. May 27, 2020) (denying Fort Dix petitioners' habeas petition as lacking jurisdiction, and noting that irreparable harm is unlikely to result because of possibility of compassionate release). Second, he argues that the Bureau of Prisons' statistics undercount the positive inmates, as there is no regular testing. *Id.* at 5-7, 22 ("Respondents concede that they have not and are not testing all inmates in the Low [FCI]").

The Court finds that Mr. Quiros's unique combination of medical conditions suggests he may be at a lower risk of infection on home confinement, and thus he presents a preliminary "extraordinary and compelling reason" for release.

B. *18 U.S. § 3553(a) factors*

But granting Mr. Quiros's request for compassionate release is not consistent with the 3553(a) sentencing factors. The Court sentenced Mr. Quiros to 136 months of imprisonment and the Bureau of Prisons currently estimates his release date to be March 22, 2027. Inmate Locator: Orlando Quiros, 25449-014, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/.

Mr. Quiros was raised in a loving and supportive environment and graduated from high school but is nonetheless serving a sentence for his third narcotics sales arrest. [ECF No. 275 ¶¶ 40, 41, 49, 64]. He committed his first drug offense at age 28. *Id.* at ¶ 40. He committed his second drug offense after receiving a lenient noncustodial sentence *Id.* at ¶¶ 40. He was arrested for the instant offense almost

10 years after serving 11 months in custody for sale of narcotics. *Id.* at ¶ 41. Neither his supportive family nor his previous 11-month term of incarceration deterred him from persisting in large-scale drug distribution. For this reason, the Court finds that release—even to home confinement—would "provide an undue windfall that would severely undermine the goals of the sentence this Court imposed." *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020).

### C. *Policy Statement: Danger to Others or the Community*

Most compelling is Mr. Quiros's danger to the community. The Commission's policy statement provides for granting a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The relevant period is between now and March 22, 2027, when Mr. Quiros would otherwise be released from the Bureau of Prisons. *See United States v. Rivera*, No. 3:13-CR-71-1 (VLB), 2020 WL 3186539, at *6 (D. Conn. June 15, 2020) (citing *United States v. Hill*, No. 3:19-CR-00038 (JAM), 2020 WL 2542725, at *3 (D. Conn. May 19, 2020)).

While incarcerated, Mr. Quiros has completed accounting and marketing courses and has had no disciplinary citations. [ECF No. 356 (Discipline and Education Records)]. Although the Court compliments Mr. Quiros's constructive use of his time, his offense was not aberrant behavior, but rather leadership and organization of a months-long large-scale drug trafficking conspiracy, involving over between five and fifteen kilograms of cocaine and illegal possession of firearm

8

ammunition. [Dkt. 275 at ¶¶1, 11-21. An unremitting drug trafficker who resorts to the possession of firearms ammunition poses a lethal danger to the community.

I. <u>**Conclusion and Orders**</u>

For the reasons above, the Court denies Mr. Quiros's motion for compassionate release. IT IS SO ORDERED.

                                                    /s/
                              Hon. Vanessa L. Bryant
                              United States District Judge

Dated this day in Hartford, Connecticut: July 30, 2020