UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | 3:17-CR-160 (SVN) |
| | ) | |
| v. | ) | |
| | ) | |
| ORLANDO QUIROS | ) | |
| | ) | |
| | ) | December 21, 2023 |

## INDICATIVE RULING ON MOTION TO REDUCE SENTENCE

Sarala V. Nagala, United States District Judge.

Defendant Orlando Quiros has moved to reduce the custodial portion of his sentence to time served pursuant to 18 U.S.C. §§ 3582(c)(1)(A)(i), as amended by Section 603 of the First Step Act of 2018. In April 2023, after Defendant had served 69 months of his 136-month term of incarceration, the Bureau of Prisons ("BOP") released Defendant to home confinement pursuant to its authority under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. Since then, he has resided at home, but remains under BOP custody and reports to a halfway house every fourteen days. His motion requests that his sentence of imprisonment be reduced to time served, and that he be allowed to commence his 60-month term of supervised release. Because an appeal is currently pending in this matter, he seeks an indicative ruling that, if the Court of Appeals were to remand the case to this Court, this Court would grant his motion. *See* Fed. R. Crim. P. 37(a).

For the reasons discussed below, the Court would grant the motion if the Court of Appeals remanded the case for that purpose.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 2018, Defendant pleaded guilty to one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine and one count of unlawful possession of a firearm. Plea Agmt., ECF No. 225. On February 19, 2019, Defendant was sentenced by this Court

(Bryant, J.) to two terms of 136 months of imprisonment, to be served concurrently, and five years of supervised release.  Judgment, ECF No. 284.  His offense was serious, as it involved "leadership and organization of a months-long large-scale drug trafficking conspiracy" and possession of a firearm, which poses a "lethal danger" to the community.  Order Denying Mot. for Compassionate Release, ECF No. 362 at 8–9.

In June of 2020, early in the COVID-19 pandemic, Defendant filed an emergency motion for compassionate release.  Mot. for Compassionate Release, ECF No. 342.  He argued that he suffers from a rare autoimmune disease, pemphigus vulgaris, which required immunosuppressant medication and rendered him particularly susceptible to contracting COVID-19 while in prison.  While Judge Bryant found that Defendant's medical condition "suggests he may be at a lower risk of infection on home confinement, and thus he presents a preliminary 'extraordinary and compelling reason' for release," she ultimately denied the motion, finding that granting the request for release "is not consistent with the [18 U.S.C. §] 3553(a) sentencing factors."  ECF No. 362 at 7–8.

In September of 2022, Defendant filed a *pro se* motion for reconsideration of the decision to deny him compassionate release, noting that he had not received adequate medical care for his pemphigus vulgaris in prison.  The Government opposed the motion, and Judge Bryant denied it.  ECF No. 385.  Defendant filed a *pro se* appeal of Judge Bryant's decision, which remains pending at the U.S. Court of Appeals for the Second Circuit.  *See United States of America v. Quiros*, Case No. 22-2901 (2d Cir. 2022).

On April 25, 2023, the BOP released Defendant into home confinement pursuant to its authority under the CARES Act.  As of that date, Defendant had served 69 months of his sentence

in custody. While incarcerated, Defendant completed accounting and marketing courses and did not incur any disciplinary violations.

Upon his release to home confinement, Defendant began living in the community. He has been supervised by the Drapelick Center, a halfway house, to which he has reported every fourteen days. Within two months, he obtained full-time employment as a certified flagger for Connecticut Traffic Control, and advanced quickly from earning $17 per hour to his current salary of more than $45 per hour. Beginning in September of 2023, he started to reside in his own apartment in Bristol, Connecticut. Aside from two minor violations discussed below, Defendant has been fully compliant with the conditions of home confinement enforced by the Drapelick Center and was named "Client of the Month" by the Drapelick Center in July of 2023.

## II.     LEGAL STANDARD

### A. Motions for Reduction of Sentence

Under 18 U.S.C. § 3582(c), a court may "reduce the term of imprisonment" upon a motion of the defendant if the defendant has fully exhausted all administrative rights as defined by the section, and, after consideration of the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction," and the reduction is consistent with "applicable policy statements issued by the Sentencing Commission." District courts have wide "discretion in determining what are extraordinary circumstances." *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). The policy statement in the United States Sentencing Guidelines § 1B1.13 provide that one such extraordinary and compelling reason for a sentence reduction can be a defendant's medical circumstances. Further, the policy statement clarifies that, although the rehabilitation of a defendant cannot alone constitute an extraordinary and compelling reason for a

sentence reduction, it can be considered "in combination with other circumstances." U.S.S.G. § 1B1.13(d).

### B. Indicative Rulings

Under Federal Rule of Criminal Procedure 37(a), if a timely motion is made for relief that a district court lacks authority to grant because of a pending appeal, the district court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the Court of Appeals remands for that purpose of that the motion raises a substantial issue. If the district court states that it would grant the motion or it raises a substantial issue, the movant must promptly notify the Court of Appeals, and the district court may decide the motion if the Court of Appeals remands for that purpose. Fed. R. Crim. P. 37(b) & (c).

## III. DISCUSSION

The Court holds that, were the Court of Appeals to remand the case, it would grant Defendant's motion to reduce his sentence to time served, such that he could begin his term of supervised release.

First, it is undisputed that Defendant has exhausted his administrative rights. *See* ECF No. 395 at 5. That threshold element met, the Court further finds that Defendant has demonstrated an extraordinary and compelling reason to reduce his sentence. Namely, Defendant suffers from a rare and severe autoimmune disease, pemphigus vulgaris, which can have life-threatening complications. Treatment for the condition includes immunosuppressant medication delivered via infusion, and Defendant demonstrated significant difficulty obtaining infusions while in custody—in fact, he received zero infusions while in BOP custody. *See* ECF Nos. 397 at 4; 397-1 at 2–3. Defendant notes that, for political reasons beyond his control, he—and others released by the BOP to home confinement during the pandemic—could be subject to reimprisonment. *See* ECF

4

No. 397 at 2–3.  Further, Defendant has had some difficulty obtaining infusions while on home confinement, due to the lack of flexibility in his current conditions of home confinement for him to attend appointments, particularly those scheduled on short notice.  *See* ECF No. 397-1 at 3; *see also United States v. Mize*, No. 3:12-CR-137-TAV-HBG, 2021 WL 3891062, at *4 (E.D. Tenn. Aug. 31, 2021) (noting that the defendant's health was at less risk while on home confinement pursuant to the CARES Act, but analyzing risk in BOP custody in part because home confinement could be revoked by BOP at any time).  And while the threat of the COVID-19 pandemic has lessened, Defendant is generally still at a higher risk of illness and complications from COVID-19 due to his condition.  *See* ECF No. 362 at 4 (finding that Defendant's condition was an "extraordinary and compelling reason," in part because of risk due to COVID-19); *see also United States v. Hebel*, No. 11-CR-20320-1, 2021 WL 6072303, at *2 n.3 (E.D. Mich. Dec. 23, 2021) (noting that risk of contracting COVID-19 in prison was still relevant, even while the defendant was on home confinement, since she could be returned to custody at any time).  Lastly, the Court finds it relevant that BOP's decision to release Defendant to home confinement implies that BOP already made a determination that Defendant was medically vulnerable.  *See* ECF No. 397 at 6; *see also United States v. Gamboa*, 467 F. Supp. 3d 1092, 1101 (D.N.M. 2020) (noting that, "in plac[ing] [defendant] in home confinement . . . the BOP acknowledged that Defendant has a serious medical condition").  Thus, Defendant's medical circumstances present an extraordinary and compelling reason to reduce his sentence.

Considering Defendant's rehabilitation "in combination" with his medical condition further tips the scales in favor of sentence reduction.  *See* U.S.S.G. § 1B1.13(d).  While in custody, Defendant completed academic courses and incurred no disciplinary violations.  ECF Nos. 356-1; 356-2.  Since his release to home confinement, Defendant has obtained full-time employment with

a salary of more than $45 per hour and has secured his own apartment. This high salary mitigates, at least in part, the risk of recidivism for financial reasons. Further, Defendant's Drapelick Center case manager wrote in support of his motion, and noted that he was named "Client of Month" by the Drapelick Center in July of 2023. Defendant has incurred only two minor technical violations during his period of home confinement, the circumstances of which were explained on the record at the hearing on December 20, 2023, and raise little concern of recidivism. Specifically, on one occasion, Defendant drove a new car he had purchased to the Drapelick Center to report the new vehicle; upon arrival, he was advised he should have had someone else drive the vehicle from the place of purchase to the Drapelick Center and was cited for having an unauthorized vehicle. On the second occasion, he had received verbal permission to pick up his son on Thanksgiving but, due to a miscommunication with staff, this permission was apparently insufficient. He was originally required to reside at the Drapelick Center for fifteen days for this alleged violation, but was allowed to return to his home after two days, and Defendant's counsel represented that the community passes that were reported to the Court as revoked were not actually revoked.

Although the Court understands the Government's position that a longer track record of compliance would be desirable, the Court finds that 69 months of time in custody with no violations, followed by almost eight months of home confinement with not only no meaningful violations but significant progress, constitutes admirable rehabilitation.

Turning to consideration of the Section 3553(a) factors, the Court finds that these do not override the reasons for sentence modification. Although the Court respects the reason for the imposition of the original sentence, and acknowledges the seriousness of the offense, the Court finds that allowing Defendant to begin his period of supervised release comports with the goals of the factors set forth in Section 3553(a). As discussed above, Defendant has already demonstrated

significant capacity for rehabilitation.  Allowing Defendant to proceed to supervised release would only serve to further his rehabilitation, and the good of the public, as he would have access to greater supervision and resources.  *See United States v. Calhoun*, 539 F. Supp. 3d 613, 616 (S.D. Miss. 2021) (noting favorably that "releas[e] from home confinement to [a] term of supervised release [would] transfer [defendant's] supervision from the halfway house . . . to a local probation officer who can offer [defendant] re-entry resources to ease his transition back to society").  As for deterrence, the Court will have authority to impose a revocation sentence of up to 60 months of imprisonment if Defendant violates any condition of his supervised release, which will serve a significant deterrent effect.  Although Defendant has only served slightly over 50% of his original sentence at this time, the Court nonetheless finds that his punishment has been just, considering all of the circumstances.  *See United States v. Page*, No. 3:15-CR-00055 (AWT), 2020 WL 7258034, at *2 (D. Conn. Dec. 10, 2020) (issuing indicative ruling ordering compassionate release where defendant had served 43% of his sentence).  Lastly, in light of the BOP's decision to release Defendant into home confinement, the Court does not find that transitioning from home confinement status to supervised release status presents any increased risk of danger to the community.  *See* ECF No. 397 at 6; *see also United States v. Totaro*, No. 4:99-CR-40137-RAL, 2022 WL 795932, at *10 (D.S.D. Mar. 16, 2022) ("The Court does not foresee [defendant] as any greater danger on supervised release than he is on home confinement.").

Thus, weighing all the factors the Court must consider, the Court finds that reduction of Defendant's custodial sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is warranted, and it would grant Defendant's motion if the Court of Appeals remands for that purpose.

**IV.     CONCLUSION**

Pursuant to Federal Rule of Criminal Procedure 37(a), for the reasons described in this ruling, the Court states that it would grant Defendant's motion for reduction in sentence, were the Court of Appeals to remand the case for that purpose.  Defendant shall promptly notify the Court of Appeals of this decision.  *See* Fed. R. Crim. P. 37(b).


**SO ORDERED** at Hartford, Connecticut, this 21st day of December, 2023.

         */s/ Sarala V. Nagala*
         SARALA V. NAGALA
         UNITED STATES DISTRICT JUDGE